IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH ALONZO JACOBS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-1227 |
| JOHN KELSON, et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants John Kelson, Thomas Laue, Officer Wilkerson, Officer Watkins, Officer Webb, Officer Mayberry, Officer Rust, Sgt. Frim, Lt. Gaddy, Lt. Vance, Sgt. Most, Officer Street, Officer Cole, Officer Rowley, Mr. Garner, Mike Ockcha, and Mr. Belvins' Motion to Dismiss (ECF No. 8). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons stated below, the Court will grant the Motion, and the Complaint will be dismissed.

### I.   BACKGROUND

Self-represented Plaintiff Kenneth Alonzo Jacobs was incarcerated in the Jennifer Road Detention Center in Annapolis, Maryland. (Compl. at 3, ECF No. 1). He claims that on December 21, 2022, Defendant Officer Watkins performed a urinalysis test, but before doing so, he asked if the test would return a positive result for anything. (Id.). Jacobs responded that he would likely test positive for marijuana "from [his] use from the street." (Id.). Jacobs told Watkins that he smoked marijuana heavily prior to his arrest; the test was

performed 29 days after he was arrested. (Id. at 5). Watkins assured Jacobs that they were not looking for marijuana with the test and asked him to write down what he had just told him. (Id. at 3).

On December 22, 2022, Officer Mayberry woke Jacobs up and told him to pack his property because he was going to the disciplinary housing unit (DHU) due to a "dirty urine" sample. (Id.). When Jacobs confirmed with Mayberry that the test result was "for weed," Jacobs commented that "ma[de] no sense." (Id.). Sgt. Frim was called to the unit where Jacobs' cell was located and threatened to pepper spray him if he did not move. (Id.). Jacobs argued that he had done nothing wrong; nevertheless, he was forced to go to the DHU. (Id.). Jacobs claims that Defendant Officer Rust, Defendant Officer Webb, and Officer Church[1] assisted Frim. (Id.).

Upon arrival to the DHU, Jacobs claims he was put into Receiving Cell 3, which he described as being extremely hot, causing him to sweat profusely and triggering his asthma. (Id.). Jacobs states that Webb "had to call medical 3 times due to it being so hot." (Id.). Jacobs alleges that unnamed medical staff told him he should not be in that cell, but he was kept in the cell for three days. (Id.).

On December 23, 2022,[2] Jacobs claims he asked Webb if he could talk to Sgt. Holland while Holland was doing his rounds, and Webb agreed to permit Jacobs to do so.

---

[1] Officer Church is not named as a Defendant in Jacobs' Complaint (Compl. at 1).
[2] Jacobs appears to have initially stated the dates as occurring in November and changed most of the dates to reflect that they occurred in December. He neglected to change this date, but the Court assumes that the facts underlying the Complaint all occurred in the same month and the error was simply an oversight.

(Id.). According to Jacobs, Holland asked him why he was there, and Jacobs replied that he did not know. (Id.). Jacobs states that he was moved from that cell twenty-six hours later. (Id.).

On December 24, 2022, Jacobs claims he was placed on "lock-up for no reason" and was not given a blanket, despite the outside temperature being seven degrees. (Id.). He states he was given only a sheet, and when he contacted Officer Rowley to ask for a blanket, Rowley called Webb. (Id.). According to Jacobs, Webb told Rowley that Jacobs was "whining like a little bitch." (Id.). Three hours later, Jacobs had not received a blanket. (Id.). Jacobs does not explain how long it took for him to receive the blanket he requested.

Jacobs concludes that he was "treated unfairly, called out [b]y name, [de]graded, not given proper hygiene[,] not aloud [sic] to use the phone or to take a hot shower, no heat, when I did nothing wrong." (Id.). He states that his rights were clearly violated. (Id.). He seeks to be compensated for the six days he was in segregation without cause. (Id. at 5).

Jacobs filed his Complaint on May 8, 2023. (ECF No. 1). Defendants filed a Motion to Dismiss on August 30, 2023. (ECF No. 8). Jacobs filed an Affidavit of Facts, which this Court will construe as a Response in Opposition, on August 31, 2023. (ECF No. 10).

## II.  DISCUSSION

**A.  Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or

3

the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions

couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.   Analysis**

   **1.   Defendants' Motion**

Defendants assert that Jacobs has failed to allege a deprivation of a constitutional right or that the deprivation was caused by a state actor, as required to state a claim under 42 U.S.C. § 1983. (Mem. Support Mot. Dismiss at 3–4, ECF No. 8-1). They argue that, at best, Jacobs has described conduct that "may appear on its face to establish tortious conduct," but that does not mean Jacobs has stated a viable § 1983 claim. (Id.). Defendants additionally assert that the Complaint does not state a claim of deliberate indifference to a serious medical need because Jacobs not only failed to assert that any of the seventeen named Defendants knew he had asthma but also that Jacobs drew an inference that the temperature of his cell would present a significant risk of harm to him. (Id. at 4–5). Next, Defendants state that there are no direct allegations raised against Defendants Mr. Blevins, Officer Cole, Lt. Gaddy, Mr. Garner, Thomas Laue, Sgt. Most, Mike Okocha, Officer Street, Lt. Vance, and Officer Wilkerson, (id. at 6), and that they are entitled to qualified immunity, (id. at 6–7). To the extent that Jacobs raises a claim of excessive force,[3] Defendants allege that the claim fails because there was a de minimus amount of force used. (Id. at 7–8).

---

[3] Affording the Complaint liberal construction, this Court concludes that Jacobs has not raised an excessive force claim and therefore declines to address this argument by Defendants.

## 2. Conditions Claim

Although it is not clear whether Jacobs was a pre-trial detainee or was serving a sentence after a conviction at the time of the events giving rise to this Complaint, his claim regarding the conditions under which he was confined fails under both the Eighth and Fourteenth Amendment standards. "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." Barnes v. Wilson, 110 F.Supp.3d 624, 629 (D.Md. 2015) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). In turn, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; Gregg v. Georgia, 428 U.S. 153, 173 (1976); see Estelle v. Gamble, 429 U.S. 97, 102 (1976); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016). "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) (citing Bell, 441 U.S. at 538–40). A particular restriction or condition of confinement amounts to unconstitutional punishment in violation of the Fourteenth Amendment if it is imposed by prison officials with the express intent to punish or if it is not reasonably related to a legitimate, non-punitive goal. Bell, 441 U.S. at 538–39 (noting that restrictions or conditions that are arbitrary or purposeless may be considered punishment). It is not the province of this Court to determine whether the challenged conditions amount to punishment and how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. See Sandin v. Conner, 515 U.S. 472, 482–83 (1995).

Here, Jacobs's factual allegations amount to little more than inconvenience and temporary discomfort. When he was in a cell that was too hot, he was moved to another cell. (Compl. at 3, ECF No. 1-1). When he was in a cell that was too cold, he asked for a blanket, and one was provided to him. (Id.) Further, Jacobs does not describe any deleterious effects caused by the conditions under which he was confined in either his Complaint or Opposition. (Compl. at 3–5; Resp. Opp'n ["Opp'n"] at 1, ECF No. 10). This claim must be dismissed.

### 3. Disciplinary Proceeding

The Complaint alleges that Jacobs was improperly charged for the use of marijuana after he informed the officer that his urinalysis would show that result. Jacobs states in his Opposition that he also informed Officer Watkins that he had a medical marijuana card that he used prior to his arrest. (Compl. at 3). Jacobs was, nevertheless, found guilty. (Id.).

In the context of disciplinary proceedings for pre-trial detainees, the Fourteenth Amendment's due process clause guarantees certain protections prior to placement into disciplinary segregation. See Dilworth v. Adams, 841 F.3d 246, 251 (4th Cir. 2016). Pre-trial detainees retain a liberty interest in freedom from punishment while they are detained for the purpose of ensuring they appear for trial. Bell, 441 U.S. at 535–37, see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) (pre-trial detainees are protected as to any form of treatment amounting to punishment). While procedural due process in the setting of a detention center or prison disciplinary proceeding does not equate to a guarantee of a full adversary trial, such as that guaranteed in criminal proceedings, certain minimum requirements must be met. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Among the

7

protections required are (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. Id. at 564–66, 592.

Here, Jacobs's primary complaint is that there was no evidence that he violated detention center rules since the urinalysis test was conducted while the legally permissible medical marijuana was still in his system. (Compl. at 3; Opp'n at 1). There is no claim that Jacobs was denied a hearing or that the hearing he was provided somehow did not comport with due process. (Opp'n at 1–2). Indeed, the documents submitted by Jacobs indicate that the Hearing Officer reduced his original infraction. (Id. at 10). It is not the Court's role to review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980). The findings will only be disturbed when unsupported by any evidence or when wholly arbitrary and capricious. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 456 (1985) (requiring only "some evidence" to support a disciplinary hearing officer's conclusions); see also Tyler v. Hooks, 945 F.3d 159, 171 (4th Cir. 2019) (stating that some evidence standard is "extremely broad").

Jacobs's claim regarding the disciplinary proceeding against him must, therefore, be dismissed.[4]

### 4. Medical Care

Jacobs's claim alleging that the Defendants' deliberate indifference exacerbated his serious medical condition and asthma fails. To establish a constitutional claim regarding medical care in the context of pre-trial detention or post-sentencing incarceration, Jacobs must allege he was suffering from a serious medical need, Defendants knew of the medical condition, and Defendants blatantly disregarded the excessive risk to Jacobs's health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Assuming that Jacobs had a serious medical condition, there is no allegation that his need for medical attention was ignored or that any attempt to provide him with a medical assessment was thwarted by these Defendants, all of whom are correctional officers. "[T]he prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" Anderson v. Kingsley, 877 F.3d 539, 545 (4th Cir. 2017) (quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th

---

[4] To the extent that Jacobs attempts to raise a claim regarding another disciplinary proceeding in his Opposition that was not raised in his Complaint, he may not amend his Complaint through his Opposition. See Woodbury v. Victory Van Lines, 286 F.Supp.3d 685, 692 (D.Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint), Allegis Group, Inc. v. Bero, _ F.Supp.3d __, 2023 WL 5989438, at *47 (D.Md. Sept. 1, 2023) (same); see also Equal Rights Ct. v. Niles Bolton Assoc., 602 F.3d 597, 603 (4th Cir. 2010) (amendment of complaint may be denied when the amendment is prejudicial to the opposing party because it is belated and changes the nature of the litigation). Jacobs' claims regarding the disciplinary proceedings that occurred in April of 2023 and his claims that his right to practice his religion were violated will not be addressed here. Jacobs remains free to file a separate civil rights action regarding those claims.

Cir. 2004)). Here, Jacobs alleges that the temperature of his cell was causing him to suffer an asthma attack and that he asked for medical attention, which he received. There is nothing in the Complaint or Opposition to suggest that Defendants did not respond reasonably to the risk or that Jacobs suffered any harm as a result of their actions. See Cox v. Quinn, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). The Complaint fails to state a claim for deliberate indifference to a serious medical need and must be dismissed.[5]

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 8) and dismiss the Complaint. A separate Order follows.

Entered this 2nd day of November, 2023.

/s/
George L. Russell, III
United States District Judge

---

[5] Because this Court finds that the Complaint does not state a claim on which relief may be granted, Defendants' additional claims regarding immunity need not be addressed.